ORIGINAL

John Doe
IP 68.8.161.188
doedefendant@yahoo.com
Defendant Pro Se



FILED
MAR 19 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., | Case Number: C11- 03682-LHK (HRL) |
| Plaintiff, | |
| vs. | MOTION TO SEVER DEFENDANTS |
| DOES 1-166     , | MOTION TO DISMISS |
| Defendants. | |

BY FAX

## 1. INTRODUCTION

On March 12, 2012 I received a letter from Prenda Law, dated 03/07/2012, pressuring me to settle with them in order to avoid having my name attached to this law suit. The letter states: "*To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by*". Please see Exhibit A.

I researched the matter and found that, although innocent, I am being sued as part of a predatory mass lawsuit and money collection scheme that Plaintiff and his counsel have fabricated.

The court documents related to this case reveal that I and the other Doe Defendants are subject to a cleverly devised extortion scheme by Plaintiff, which Judge Grewal described accurately in a similar case, *Boy Racer v. Does 1-52*, 11-CV-2329-PSG Doc. 17:

> "This case is but one of the many "mass copyright" cases to hit the dockets of federal district courts across the country in recent months.1 While each case is ultimately unique, the initial storyline is largely the same. The plaintiff claims to own title to one or more copyrights in a film, usually of the adult entertainment variety. Claiming widespread infringement of the copyrights by individuals using the popular file-sharing internet protocol known as BitTorrent, the plaintiff brings suit against multiple defendants. Sometimes the defendants number in the dozens; something they number in the hundreds; in some cases they number in the thousands. But rather than naming each defendant by his or her first and last name, as is typical in most suits, the plaintiff sues whatever number of "John Does," with each Doe corresponding to an internet protocol ("IP") address associated with the alleged infringing activity.
> After filing the suit, the plaintiff seeks discovery from internet service providers who possess subscriber information associated with each IP address. Ordinarily, such discovery is not permitted. Fed. R. Civ. P. 26(d) is clear that, absent a court order, no discovery may take place until after the parties have conferred pursuant to Fed. R. Civ. P. 26(f),2 and no such conference is possible when the defendants have yet to be identified, let alone named and served. Yet the plaintiff assures the court that this is not a problem. If the court would simply authorize it, the plaintiff can issue a targeted subpoena to the internet service provider associated with each IP address and secure the subscriber information associated with each address. With the subscriber information in hand, the court is told, the plaintiff can proceed to name the defendants in the conventional manner and serve each defendant, so that the case may proceed to disposition. This disposition might take the form of settlement, summary judgment, or if necessary, trial."

Judge Zimmerman shed more light on the true underlying intentions of Plaintiff when he clarified in his *Order Severing Doe Defendants 1-16 and 18-5011* from September 6, 2011 with respect to these mass lawsuits:

> "According to public reports, plaintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe Defendant in settlement." *On The Cheap v. Does 1-5011*, C10-4472-BZ

## 2. ARGUMENT

### A. This lawsuit is bogus and should be dismissed because of improper joinder

Joinder was found to be improper in several cases in the Northern District of California, in which Courts have found that permissive joinder of the Doe Defendants is improper under Rule 20(a). United States Magistrate Judge Joseph C. Spero treats this subject at length in *Hard Drive*

Motion to Sever and Dismiss Defendant
11-CV-03682-LHK (HRL)

Page 2 of 8

*Productions v. Does 1-188*, C-11-01566-JCS, a case also brought by the same attorneys as in this case with a similar, if not identical, complaint. The Court concluded that joinder is improper under Rule 20(a):

> "Although some courts have distinguished BitTorrent from prior P2P technologies and on that basis have permitted joinder of multiple Does who are part of a single "swarm", at least at the early stages of the case, several judges in the Northern District of California have recently found that use of BitTorrent, like earlier P2P technologies, is not sufficient to satisfy the requirements of Rule 20(a), *even if* the Doe Defendants are part of a single swarm. For the reasons stated below, the Court finds that the latter approach is more persuasive. Therefore, the Court concludes that permissive joinder of the Doe Defendants is improper under Rule 20(a)." *Hard Drive Productions v. Does 1-188*, C-11-01566-JCS, Doc. 26, Page 9. The same document was filed as Document 14-1 to this case.

*Boy Racer v. Does 1-60*, N.D. CA. No. 11-CV-01738-SI was a case also brought by the same attorneys as in this case. The Court stated with regard to the question of joinder:

> "Even with the description of the BitTorrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a <u>given</u> swarm. Presumably he does so in response to the concern highlighted by Judge Ryu that users in <u>different</u> swarms have nothing in common other that downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms. Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this stage of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of copyrighted work would patiently wait six weeks to collect the bits of work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough. Finally, nothing in the BitTorrent architecture changes the fact that each defendant also will likely have a different defense."

**B. The case should be dismissed because the scope of discovery is overbroad and overreaching**

In order to fully identify the Doe Defendants, Plaintiff would not only need to know the identifying information of each Doe Defendant, but also require a large-scale search of personal hard drives of the Doe Defendants (and likely, family members, friends, and neighbors) in order

Motion to Sever and Dismiss Defendant  
11-CV-03682-LHK (HRL)

to tie together the individual Doe Defendants' actions and justifying joinder afterwards. The scope of this discovery obviously goes far beyond what would be reasonable and was therefore characterized as a "fishing expedition" in Boy Racer, Inc. v. Does 1-52, Northern District of California, Case No. 11-2329, Docket No. 17:

> "But to ask at first for a limited number of ISP subpoenas, and only later to reveal that an inspection of potentially gigabytes of personal data is being sought, strikes the court as an error more egregious than that of poor foresight. Even if the court had not been told before precisely the opposite of what it is being told now, Boy Racer offers nothing to justify the almost unbounded scope of its request for additional discovery other than the inadequacy of the discovery it has taken already. This would seem to be a prototype of what others in cases such as this have labeled the classic "fishing expedition."[19] Accordingly, the court hereby withdraws its May 31 Order granting limited early discovery and DENIES any pending or proposed requests for further discovery."

The Court in *Hard Drive Productions v. Does 1-87* shared this view regarding the search of personal data in a similar case brought by the attorneys in this case, see *Hard Drive Productions v. Does 1-87*, N.D.CA. No. C-11-02333-JCS, Document 14:

> "In that case, Judge Grewal denied the plaintiff's request for further discovery. Similarly, it is highly unlikely that the undersigned would permit such extensive and invasive discovery of non-parties to determine the identity of the Doe Defendants."

The "evidence" provided by Plaintiff in the form of a simple list of IP addresses is useless in determining the true identity of the individual Doe Defendants. Even if each Doe was sued individually, an IP address cannot be tied to a single person. Courts across the country have ordered this way consistently.

Moreover, the architecture of BitTorrent is such that each Peer must be connected to a swarm in order to "see" its activity. Remarkably, the only party to this suit that was part of the swarm in question for the *entire* 3-months monitoring period is Plaintiff himself, which raises the suspicion that Plaintiff might have made the allegedly infringed video available himself, only to then "monitor" the resulting traffic and subsequently sue the participants of the swarm for infringement.

There can be no doubt that Plaintiff filed a bogus complaint for the sole purpose of extorting settlements from innocent people whose only reason for accepting the proposed settlement might be to keep their good name from being attached to this case.

I therefore respectfully ask that the case against me be dismissed.

### C. The case should be dismissed because it places undue burden on Doe Defendants

As I am located outside of the District of Northern California, I would face significant difficulty in defending myself in Northern California because I am left with the choice of expending significant time and travel expenses to represent myself or would have to hire an attorney to do so.

This puts me "between a rock and a hard place": Either I settle for the seemingly less expensive option of settling with Plaintiff, thereby rewarding him for his predatory behavior and encouraging him to file more such frivolous lawsuits. Or I can do what is right, namely defend myself, at a likely significantly higher cost because I would a) need to hire an attorney and b) incur substantial travel expenses and loss of income for dealing with a court case in Northern California.

I find that this situation violates the "principles of fundamental fairness" and is prejudicial to me and those Doe Defendants that are located outside of District of Northern California, if not all Doe Defendants.

> "However, plaintiff's desire to enforce its copyright in what is asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass that plaintiff is creating." *On The Cheap v. Does 1-5011*, C10-4472-BZ.

The Court in *Hard Drive188* also concluded that the path taken by Plaintiff creates undue burden:

> "The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings – a significant burden when, as here, many of the defendants will be appearing *pro se* and may

not be e-filers. Each defendant would have the right to be at each other defendant's deposition – creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable – with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice."

Judge Spero explained in *Hard Drive 188, Doc. 26, P.8* how the Court has the power to stop such unnecessary burden:

> "Furthermore, Rule 26(c)(1) provides:
> A party or person from whom discovery is sought may move for a protective order in the court where the action is pending…The court may, for good cause issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…forbidding the disclosure or discovery.
> Fed. R. Civ. P. 26(c)(1). The court also must:
> limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that…the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues."
> Hard Drive Productions v. Does 1-188, C-11-01566-JCS, Doc. 26, P.8

The "amount in controversy" is the price for the video that Doe defendants allegedly downloaded. While I did not find a price for this particular video on the Internet, I noticed that a subscription to Plaintiff's website costs $33 per month and gives access to "Over 3000 High-Res Movies, Over 30,000 High-Res Images". The value of a single video cannot be very high, certainly not high enough to justify the expense of a large-scale search of gigabytes of Doe Defendants' personal information. Research on websites that sell pornographic videos shows that a DVD with five to seven "scenes" retail for around $20. That would put the retail value of one single scene, as is the case in this lawsuit, at about $4.

The Court in *On The Cheap v. Does 1-5011*, C10-4472-BZ was surprised about this discrepancy as well and stated:

> "The Court's concerns are heightened by plaintiff's refusal to file under seal a copy of its settlement letter and related information about its settlement practices. The film sells for $19.95 on plaintiff's website. According to public reports, plaintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe Defendant in settlement. If all this is correct, it raises the question whether this film was produced for commercial purposes or for purposes of

generating litigation and settlements. Put another way, Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws "to promote the Progress of Science and useful Arts." If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts."

I therefore motion to be severed from the action and that the action against me and the other Doe Defendants be dismissed.

### D. LACK OF PROPER NOTIFICATION

I am very dismayed that Prenda Law has been able to obtain my personal identifying information from my ISP, COX Communications, without any notification to me by COX. Documents filed by other defendants reveal that they had an opportunity to protect their privacy, but I was denied that opportunity. Defendants filed motions as early as 9/26/2011 seeking to protect their privacy, and I only now became aware of this suit on March 12, 2012 – 230 days (32 weeks) after the suit was filed, and after my identity has been revealed to Plaintiff. This is very unfair to me, as to my knowledge I'm the *only Defendant* whose personal information has been revealed to Plaintiff.

I therefore respectfully request that the Court re-instate my privacy by ordering Plaintiff to seek leave of Court before publicly identifying me in any filing.

### 3. CONCLUSION

For the reasons stated above, I respectfully request that:

1. The Court sever me from this lawsuit and dismiss the case against me because of improper joinder of the Doe Defendants.

2. The case be dismissed because it places undue burden on me.

3. That the Court order Hard Drive to not to publicly file any document revealing my identity without prior order of the Court and that, absent Court order, my name should be kept confidential.

I blanked out my name and address in Exhibit A and file these motions as John Doe because I feel that I have been treated unfairly in this suit as result of circumstances beyond my control and seek to protect my identity and good reputation.

Dated : March 19, 2012                    Respectfully submitted,

                                          John Doe

                                          IP 68.8.161.188

# Exhibit A



03/07/2012

VIA U.S. MAIL

Re: Hard Drive Productions, Inc. v. Does 1-166
5:11-cv-03682-LHK Ref #64948

Dear          :

Prenda Law, Inc. has been retained by Hard Drive Productions, Inc. to pursue legal action against people who illegally downloaded their copyrighted content (i.e., 'digital pirates'). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On May 18, 2011 at 9:00:39 PM UTC (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

> *Amateur Allure - Trinity*
> *The ISP you were connected to: Cox Communications*
> *Your IP Address you were assigned during your illegal activity: 68.8.161.188*

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On we filed an action against several anonymous digital pirates (Hard Drive Productions, Inc. v. Does 1-166). Under the applicable rules of civil procedure, our lawsuit against you personally will not commence unless we serve you with a Complaint.

While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

Fax: 312.893.5677         161 N Clark St., Suite 3200, Chicago, IL 60601         Tel: 312.880.9160
Fax: 305.748.2103         1111 Lincoln Rd., Suite 400, Miami Beach, FL 33139         Tel: 305.748.2102

www.wefightpiracy.com

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading six works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of $3,400.00 as full settlement for the claims. This offer will expire on 03/22/2012 at 4:00 p.m. CST. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

(a) Mailing a check or money order payable to 'Prenda Law Inc. Trust Account' to:
> Prenda Law, Inc.
> 1111 Lincoln Road Suite 400
> Miami Beach, FL 33139;

(b) Completing and mailing/faxing the enclosed payment authorization to:
> Prenda Law, Inc.
> 1111 Lincoln Road Suite 400
> Miami Beach, FL 33139
> Facsimile: (305) 748-2103.

Be sure to reference your case number and your 'Ref#' on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a 'spoliation of evidence' claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

We strongly encourage you to consult with an attorney to review your rights in connection with this matter. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,

*[signature]*

Joseph Perea
Attorney and Counselor at Law


Enclosures

## FREQUENTLY ASKED QUESTIONS

Q: **Why did I receive this letter?**

A: You received this letter because copyright infringement involving your Internet account was detected by our agents and corroborating information was provided by your ISP.

Q: **Why are copyright lawsuits normally filed?**

A: Copyright owners file lawsuits because they have no other way to recover revenues lost to digital piracy on peer-to-peer networks like BitTorrent. Digital piracy is threatening entire areas of creative works, including the film industry, the music industry, digital books, software developers, and many other creative professionals.

Q: **What are the benefits of settling?**

A: The benefits of settling include avoiding the time and expense of litigation and associated risks. Once you are released from a lawsuit, you cannot be found liable for acts associated with the lawsuit anytime in the future.

Q: **Will I remain anonymous if I settle prior to being named as a party to this lawsuit?**

A: Yes, you will remain anonymous if you settle prior to being named.

Q: **Has my privacy been violated?**

A: No. A copyright infringement was detected over the public Internet or a Peer-to-Peer (P2P) Network involving your Internet connection.

Q: **What if I have an unsecured wireless network/router?**

A: The Internet Service Provider (ISP) account holder is responsible for securing the connection and may be legally responsible for any infringement(s) that result from an unsecured wireless network/router. This "defense" has been raised in many criminal matters regarding such crimes as child pornography, and the courts have generally rejected this defense. As far as we are aware, this defense has never been successfully argued, in multiple contexts, including child pornography and civil copyright infringements actions.

Q: **I haven't infringed on a copyright, why did I receive a notice?**

A: If you are unfamiliar with the content, we normally find that the infringement was the result of a spouse, child, roommate, employee, or business associate uploading, downloading or otherwise sharing or displaying the copyright protected material over your internet connection. Infringements can also result from an unsecured wireless network. In any of these scenarios the Internet Service Provider (ISP) account holder may be held legally responsible for the infringement(s) and settlement fees.

**Q:** What if I own a business and an employee infringed on a copyright?

**A:** The Internet Service Provider (ISP) account holder may be responsible for securing the connection and may be legally responsible for any infringement(s) that occur. We normally find that business owners pass on out-of-pocket costs to the employee that was responsible for the infringement(s).

**Q:** Will this go away if I just remove the file(s) from my computer(s)?

**A:** No. In fact, removing the file(s) associated with your case(s) is a breach of your obligation to preserve electronic evidence.

**Q:** I looked up my IP Address on my computer and it does not match the IP Address listed in your demand letter.

**A:** Almost all IP Addresses used today are done so dynamically. This means that your ISP regularly changed the IP address assigned to your computer or router. At the exact moment that our agents observed your account being involved in infringement activity, your IP address was the one listed on the demand letter you received. Your ISP has maintained sophisticated records that clearly show your computer or router had the IP address we observed committing the infringement at the time listed in the demand letter.

**Q:** What happens if I ignore this settlement offer?

**A:** Once our office has determined that you do not wish to settle, or we receive indication that you are evading our good faith efforts to resolve this matter outside of court, our client will proceed with its investigation by expanding discovery efforts, which would include the following: Depositions of subscribers and other users of the subscribers network including family, friends, and associates, forensic analysis of their computer equipment, a network survey, and a subpoena to collect Internet activity related to the subscriber's account.

**Q:** How do I know that you are legally authorized act on behalf of the copyright owner?

**A:** We are a law firm that has been hired by the Plaintiff in this matter. If you wish to receive additional information proving that we are legally authorized to act on behalf of the copyright owner(s) please contact us.

**Q:** Do I need to hire an attorney?

**A:** The decision to hire an attorney is completely up to you. We cannot give you legal advice, but speaking with an attorney is generally highly advisable. Some infringers have indicated to us that our settlement offer is significantly lower than the costs associated with hiring an attorney and litigating the matter through trial.

**Q:** How do I make this go away?

**A:** Paying the settlement fee will immediately release you from liability and close the case.



Protecting Intellectual Property

## PAYMENT AUTHORIZATION

I hereby authorize Prenda Law Inc. to withdraw funds from the bank account or credit card listed below for the settlement amount and legal issue referred to on my Release and herein below.

**Case Name and Ref#:** _____

**PAYOR INFORMATION**

Payor's Name: _____

Billing Address: _____

_____

Telephone Number: _____

Signature: _____  Date: _____

**PAYMENT INFORMATION**

Payment amount:  $_____

Name on Bank Account / Credit Card: _____

**If paying via bank account:**

Type of Account: Checking / Savings

Routing Number: _____  Account Number: _____

**If paying via credit card:**

Card Number: _____  Exp. Date: _____

Card Type:  ☐ Master Card  ☐ Visa  ☐ AmEx    ☐ Discover

CID Number: _____ (this is the last three digits on the back of your Master Card, Visa, or Discover Card, or the four digit number in the upper right corner on the front of your AmEx)

---

**Fax or mail this authorization to:**

Prenda Law Inc.
1111 Lincoln Rd., Suite 400
Miami Beach, FL 33139

Fax: (305) 748-2103

Fax: 312.893.5677     161 N Clark St., Suite 3200, Chicago, IL 60601     Tel: 312.880.9160
Fax: 305.748.2103     1111 Lincoln Rd., Suite 400, Miami Beach, FL 33139  Tel: 305.748.2102

www.wefightpiracy.com

IN RE: «Case», «CaseNo»
Title of Work: «PiratedContent»

## CONDITIONAL RELEASE AND SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is entered into as of «Letter1_Expiration» ("Effective Date"), by and between «Client», ("Owner" or "Plaintiff") and the individual or entity that was assigned IP Address «IP_Address» on «Dday» (UTC), by «ISP» (the "Subscriber" or "Defendant John Doe") (Owner and Subscriber are collectively the "Parties").

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Settlement Money</u>. Subscriber shall pay Owner the sum of «Settlement» (the "Settlement Money"). The Settlement Money shall be tendered in the form of a cashier's check, credit card or law firm check with no charge back or check cancellation, made payable to the order of "Prenda Law Inc." and delivered to Prenda Law Inc. 1111 Lincoln Road, Suite 400, Miami Beach, Florida 33139. Subscriber's payment, and Owner's receipt, of the Settlement Money shall be a condition precedent to Owner's obligation under this Agreement, as set forth below, to voluntarily dismiss with prejudice its claims against the Subscriber in the above referenced law suit.

2. <u>Confidentiality – Non Admission.</u> The terms of this Agreement shall be kept confidential. Notwithstanding the foregoing, in the event of any legal action or proceeding or requirement under applicable law or government regulations compelling disclosure of this Agreement or the terms hereof, the recipient shall forthwith notify the other party in writing of such request so that the other party may seek an appropriate protective order or take other protective measures. If, in the absence of a protective order, the recipient is liability. This Agreement is the result of a compromise and shall not be construed as an admission by the Parties of any liability, wrongdoing, or responsibility on their part or on the part of their predecessors, successors, parents, subsidiaries, affiliates, attorneys, officers, directors or employees. Indeed, the Parties expressly deny any such liability, wrongdoing or responsibility.

3. <u>Mutual Releases.</u>
   a. **Owner** and their agents, principals, attorneys, heirs, executors, administrators, predecessors, successors, assigns and privies (the "Owner Releasors"), hereby remise, release, and forever discharge Subscriber, and all of their agents, principals, partners, officers, directors, employees, associates, attorneys, insurers, heirs, executors, administrators, predecessors, successors, affiliated entities, assigns, privies, spouses and all other persons, firms or corporations, which are or might be claimed to be liable (the "Subscriber Released Parties") by virtue of the Subscriber Released Parties' liability for uploading, downloading or otherwise infringing upon Owner's copyright of the "Work", which the Owner Releasors, now have or ever had against the Subscriber Released Parties for any act or omission occurring up to and including the date of this Agreement. The Owner Releasors recognize and understand that they are releasing the aforementioned liability for any act or omission occurring up to and including the date of this Agreement which relates to the Work, regardless of whether or not they knew of said act, omission or of any injury relating thereto.
   b. **Subscriber** and their agents, principals, partners, officers, directors, employees, associates, attorneys, insurers, heirs, executors, administrators, predecessors, successors, affiliates entitles, assigns, privies, spouses and all other persons, firms or corporation, which are or might be claimed through them (the "Subscriber Releasors"), hereby remise, release, and forever discharge Owner and all of their agents, principals, partners, officers, directors, employees, associates, attorneys, insurers, heirs, family members, executors, administrators, predecessors, successors, affiliated entities, assigns, privies, spouses and all other persons, firms or corporations, which are or might be claimed to be liable (the "Owner Released Parties") by virtue of the owner Released Parties' liability, for any and all actions relating to Owner's conduct in instituting the lawsuit first referenced above in which the Subscriber Releasors, not have or ever had against the Owner Released Parties. The Subscriber Releasors recognize and understand that they are releasing the aforementioned liability for any act or omission occurring from the beginning of time up to and including the date of this Agreement, regardless of whether or not they knew of said act, omission or of any injury relating thereto.

4. <u>Independent Counsel</u>. Each party acknowledges that is has read, reviewed, and fully considered the terms of this Agreement, has had the opportunity to consult with legal counsel, has made such investigation of facts pertinent hereto as it deems necessary and appropriate, and fully understands the terms and effect of this Agreement and executes the same freely of its own accord.

5. <u>No Admission of Liability</u>. The Parties have determined that is would be in their mutual best interests not to engage in further litigation and desire to amicably resolve this matter. It is understood and agreed that this settlement is the compromise of a disputed claim, and that the payment made and other performances hereunder are not to be construed

as admissions of liability on the part of the party or parties hereby released and that the parties deny liability and intend merely to avoid litigations and buy their peace.

6. <u>Venue</u>. The venue for any action seeking to enforce or construe the meaning of this Agreement or the obligations of the Parties here under shall be the United States District Court for the Southern District of Florida.

7. <u>Legal Fees and Costs</u>. Each party shall be responsible for paying its respective legal expenses and costs incurred in connections herewith and no moneys will be exchanged except as otherwise provided for herein. Should it become necessary for either party to institute legal action to enforce the terms of this Agreement the prevailing party shall be entitled to recover from the other party the reasonable attorneys' fees and costs associated with any such actions.

8. <u>Binding Effect</u>. This Agreement shall inure to the benefit of and be binding upon the parties hereto and to their respective successors and legal representatives.

9. <u>Nonwaiver</u>. No provision of this Agreement shall be adjudged waived unless any such waiver is signed by the party against whom the waiver is asserted. The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

10. <u>Severability</u>. If any provisions or application of this Agreement shall be held invalid or unenforceable then any such provisions shall be deemed severed from this Agreement and the remaining provisions and applications of this Agreement shall not be affected, but rather shall remain valid and enforceable.

11. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and supersedes any and all other understandings and agreements between the parties with respect to the subject matter hereof and no representation, statement or promised not contained herein shall be binding on either party. This Agreement may be modified only by a written amendment duly signed by each party.

12. <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of all parent companies, affiliates, subsidiaries, related companies, defendants, franchisees, successors and assigns of each of the parties hereto.

13. <u>Jointly Drafted</u>. The parties to this Agreement have cooperated in the drafting and preparation of this Agreement. Therefore, this Agreement shall not be construed against either party on the basis that they independently drafted this Agreement.

<u>Authority</u>. Each of the undersigned signatories hereby represents and warrants that he or she has the authority to bind the individual or entity on whose behalf he or she is signing this Agreement.

IN WITNESS WHEREOF,

_____
Joseph Perea, Esq.
Prenda Law Inc.
Counsel for Plaintiff

**PROOF OF SERVICE**

Case name:   HARD DRIVE PRODUCTIONS, INC. vs. DOES 1-166

Case number:   11-CV-03682-LHK  (HRL)

On the date shown below, I, **John Doe**, (IP 68.8.161.188), served the following document(s):

1) *Motion to Sever Defendants, Motion to Dismiss*
2) *Exhibit A*

I served the documents by the following method(s): *[Check all that apply.]*

___  FAX.  The document(s) listed above were transmitted to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

_X_  U.S. MAIL.  The document(s) listed above were placed in a sealed envelope with postage thereon fully prepaid, in the United States mail, addressed as set forth below.

___  PERSONAL DELIVERY.  The document(s) listed above were delivered personally to the persons at the addresses set forth below by *[name of person who delivered the documents:]* _____.

___  EXPRESS MAIL.  The document(s) listed above were caused to be sent by Federal Express/Express Mail.

_X_  ELECTRONIC MAIL.  The document(s) listed above were caused to be sent by electronic mail.

Recipients' Names and Addresses or Fax Numbers:

*Brett L. Gibbs, Prenda Law, Inc.*

*38 Miller Avenue, #263, Mill Valley, CA 94941*

PAGE 1 OF 2

Linda Ann Ryan, Law Offices of Linda A. Ryan

182 Farmers Ln, St 101, Santa Rosa, CA 95405

Ryanlawoffices@comcast.net

Jacob Adam Snow, Orrick Herrington Sutcliffe

1000 Marsh Rd, Menlo Park, CA 94025

jsnow@orrick.com

John Doe

johnnydoe@hushmail.me

John Doe

Johndoe4629@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

March 19, 2012

        Signature:_____/s/ John Doe_____

        Printed name: ___John Doe_____